J. Irwin Shapiro, J.
The defendant, in this jury case, reserved his right to make a motion to dismiss the complaint at the end of the plaintiffs’ case, and now at the end of the entire case (subject only to medical proof on the part of the plaintiffs) he moves for a dismissal, contending that the proof in the record is insufficient, as a matter of law, to permit this case to go to the jury.
In passing upon that motion, the facts must be viewed in a light most favorable to the plaintiffs (Swensson v. New York, Albany Desp. Co., 309 N. Y. 497, 505).
The facts in this case, viewed in the light most favorable to the plaintiffs, are: On May 2, 1953, the plaintiff, an infant, then 13 and one-half years of age was playing basketball with some other boys in the yard of his grandmother’s property which adjoined the property of the defendant. The property of the defendant consisted of a store in the front, with a shed in the rear thereof and with a yard in front of the shed, parallel to that of the grandmother’s property.
It is clear from the pictures which were offered and received in evidence that the shed was in a run-down and dilapidated *896 condition. It had been purchased in that condition by the defendant about a year before the accident.
The proof establishes that for at least two years prior to May 2, 1953, the date of the accident to the infant plaintiff, children played in and about the afore-mentioned shed and that therefore the defendant knew or at least is chargeable with knowledge of that fact.
From the time that the defendant obtained title to the property in question, he made no repairs to the shed nor did he do anything in any way, shape or manner to alter its condition.
The game of basketball which was being played in the rear of the infant plaintiff’s grandmother’s yard spilled over into the defendant’s property when the basketball which was thrown to the infant plaintiff was missed by him and found its way into the defendant’s shed. The infant plaintiff went into the defendant’s shed to retrieve the basketball and was on his way out when one or two of the floorboards gave way under him, causing his foot to go through the floor and the broken floorboard to come up and strike him in the mouth, loosening two of his teeth, necessitating their eventual extraction.
The defendant, in moving to dismiss, contends that the defendant owed no obligation to the plaintiff who, concededly, was a tresspasser, and that therefore the case should not be submitted to the jury. No citations of authority were submitted by him to the court.
The plaintiffs, in arguing that they have made out a prima facie case, rely upon Levine v. City of New York which was passed upon by our Court of Appeals upon two occasions (309 N. Y. 88, 2 N Y 2d 246).
The professional witnesses for the plaintiffs have not yet been called and the court is making its determination at this time, at the plaintiffs’ request, to save the plaintiffs the expense of calling them, if the determination on this motion is adverse to them.
The Levine cases are not in point, for there the injury to the plaintiff occurred in a public place or, as the Court of Appeals phrased it on the first appeal (309 N. Y. 88, 92): “ This whole area, therefore, took on many of the characteristics of a public park or playground to which entire families are invited to come and enjoy themselves.”
In that case, therefore, no questions did or could arise as to the duty which an owner of a private building owes to an infant who trespasses upon his land and the condition of whose building results in injury to the infant,
*897 This court has taken the position that, wherever reasonably possible, the issues of fact in a case should be submitted to a jury and decision reserved upon any doubtful questions of law, with the thought in mind that if the court should thereafter come to the conclusion that the complaint must be dismissed (assuming a verdict in favor of the plaintiff) the appellate court on a review of such a dismissal, if it should find it to be erroneous, cannot only reverse but also reinstate the verdict, thus obviating the necessity for another trial. Such a procedure is not only eminently fair to a plaintiff whose complaint is dismissed, but in these days of congested calendars, does not add to the congestion by additional and unnecessary trials.
However, if the court is convinced that under no reasonable aspect of the case is there an issue for submission to the jury, it should not shirk its duty.
I am convinced, after reviewing the law on the subject, insofar as the two-hour recess has permitted me to do so, that under no view of the record is there an issue of fact calling for the verdict of a jury.
Such cases as Mayer v. Temple Properties (307 N. Y. 559) in which the plaintiff, although a trespasser, was allowed a recovery are, in my opinion, not in point.
In that case the trial referee found as a fact that the covering through which the plaintiff fell was placed there by the defendants; that it was manifestly insufficient to hold any person’s weight that might be placed upon it; that the defendants had knowledge and notice of the continued trespassing upon their premises by children; that they knew or should have known that the continued use of their premises in the manner portrayed in that case might well result in serious injuries to the children who were trespassing. There was there a frail wooden covering that could not sustain the weight of the 12-year-old plaintiff and which, when it gave way, precipitated him to the boiler room below. This covering was completely insecure and as the Court of Appeals found (p. 563) “ gave a deceptive appearance of safety, was pregnant with hazard, and the direct consequences were clearly foreseeable.”
The frail wooden covering in that case, which gave the deceptive appearance of being safe, was affirmatively placed there by the defendants with knowledge of the manner in which the premises were being used by trespassing children. The situation, thus affirmatively created by the defendant, was one which was “inherently dangerous ” and a trier of the fact could properly find, as did the trier of the fact in that case, *898 that the defendants should have anticipated the very kind of accident which caused the death to the boy in that case.
I interpret the Mayer decision as holding that the fact that a plaintiff may be a trespasser does not deprive him of a right to .recover if the instrumentality or article which caused the injury was the result of an affirmative creation by the defendant and was “inherently dangerous” (Kingsland v. Erie County Agric. Soc., 298 N. Y. 409).
In the case before me for decision, however, the defendant did not create the dangerous condition — he merely permitted it to continue. Under such circumstances, it seems to me that the facts bring this case within the principle of Carbone v. Mackchil Realty Corp. (296 N. Y. 154); Mendelowitz v. Neisner (258 N. Y. 181) and Basmajian v. Board of Educ. (211 App. Div. 347).
In distinguishing a denial of a recovery to the plaintiffs in those three cases, from its determination in the Mayer case (supra, p. 564) upholding a recovery on the part of the plaintiff trespasser, the Court of Appeals said: “In those cases, defective conditions in the property or premises were permitted to continue until decay or mere failure to repair resulted in injuries to a trespasser or licensee; there were no acts of affirmative negligence nor deceptive traps created by the defendants such as in the instant case.” (Italics in original opinion.)
Here we have the same situation which the Court of Appeals in the Mayer case (supra) pointed out as the reason for the denial of recovery in the Carbone, Mendelowits and Basmajian cases (supra). For here, too, there was no affirmative act by the defendant; there was a failure to act; his negligence was the passive negligence of permitting the defective condition of the shed to continue.
In the Carbone case (supra, p. 158) there was evidence “ that defendants had knowledge prior to the accident that one of the foundation walls was undermined.” It was one of these walls which “collapsed causing injury to each boy for which recovery has been had in these actions.”
In spite of the fact that the trier of the fact in the Carbone case (supra), the jury, could reasonably have found that the defendant had knowledge “ that one of the foundation walls was undermined ”, the Court of Appeals nevertheless reversed the judgment in favor of the plaintiffs and dismissed the complaints, saying (pp. 159-160): “The foundation walls were privately owned structures in which conceivably there was a degree of useful value to the defendants, the disposition of *899 which was a matter of their own choice. When the infant plaintiffs found their way through defendants’ premises to the foundation walls and chose to use that site for their own amusement they accepted the risk of any peril which their choice involved. When two of the boys bent upon adventure climbed to the top of a wall which had been undermined and weakened through the years, their weight caused its collapse. The record contains no evidence, however, that the harm which befell them during that escapade was due to active participation by the defendants in theyevent. In the circumstances disclosed by the record the defendants were not required as a matter of legal duty so to maintain the foundation walls upon their own property — far removed from the lanes of public travel — as to withstand the weight of the boys bent upon adventure who came upon the premises uninvited and for purposes of their own unrelated to the defendants’ business.” (Italics added.)
So, too, in this case it must be held, in view of the existing state of the law in this State, that the shed or structure owned by this defendant could be maintained by him on his own property even though it had been undermined and weakened through the years without subjecting him to liability for persons coming thereon as trespassers. If he had done something affirmatively in this case to create a trap or an otherwise inherently dangerous condition, I apprehend that under the Mayer case (supra), there would be a question of fact for submission to the jury. However, having bought the property in a dilapidated condition and thereafter having done nothing thereto except to permit it to continue to further deteriorate, the defendant may not be held liable to this plaintiff, a trespasser on his premises (Breeze v. City of New York, 249 App. Div. 856, affd. 275 N. Y. 528; Brennan v. City of New York, 266 App. Div. 790). The plaintiff, therefore, has no legal recourse for the injuries sustained by him.
Whether the time has now come to obliterate the distinctions drawn by the cases of liability only when there has been an affirmative, willful, wanton or inherently dangerous situation created by a defendant and the imposition of liability even in the case of passive negligence is for a higher tribunal than this to determine. In that connection, however, it may be interesting to note that in the Restatement of the Law of Torts, the American Law Institute has taken the position that in the kind of society in which we live at the present time the distinction drawn by the cases in this State of liability to a trespasser only as a result of an affirmative act of gross or wanton negligence *900 on the part of the defendant and not merely by reason of passive negligence should not be the law.
In that Restatement of the Law (Vol. 2, ch. 19, p. 1291), the Institute says: ‘ ‘ The distinction between reckless and merely negligent misconduct is made comparatively unimportant in the Restatement of this Subject especially with respect to the duties of a possessor of land to those coming onto the premises, by the fact that the Institute has adopted'the view that a possessor of land owes the same duty of careful action toward a known trespasser or a gratuitous licensee as he would owe had the same situation arisen in a place in which both he and the trespasser or licensee had an equal right or privilege or absence of right or privilege to be. * * * However, there are many jurisdictions in the United States where a possessor, of land is said to be liable to a known trespasser or gratuitous licensee only if he has been guilty of ‘ wanton, wilful or reckless ’ misconduct toward the trespasser or licensee.”
As has been shown, New York State is one of those “ where a possessor of land is said to be liable to a known trespasser or gratuitous licensee only if he has been guilty of 1 wanton, wilful or reckless ’ misconduct toward :the trespasser or licensee ”, although, recently in the two cases of Runkel v. City of New York (282 App. Div. 173, 177, 286 App. Div. 1101), this long-established doctrine was breached by the court and the Breeze and Brennan cases (supra), distinguished by the contention “ that the structure there (in those two cases) did not border upon the public highway and that it was not of an ‘ inherently dangerous ’ character ’ ’, and that apart from the negligence involved in the Bunkel case (supra), the defendant owner and the defendant city ‘1 violated a mandatory duty imposed upon them by statute to abate ” the inherently dangerous structure or public nuisance “facing the highway”. (Bunkel v. City of New York, 282 App. Div. 173, 177 supra.) The second Bunhel case (supra) is now waiting argument before the Court of Appeals.
Under the circumstances, therefore, this court, however it may feel as to the desirability of a change in the law, has no alternative but to grant the motion of the defendant to dismiss the complaints for failure on the part of the plaintiffs to prove a cause of action. The clerk is directed to enter judgment dismissing the complaints but in view of the stipulation entered into the record, without costs or disbursements.